USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/5/05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SAMYAK VEERA,                                     :          OPINION

                Plaintiff,            :          05 Civ. 2145 (SHS)

            -against-                              :

KATHLEEN JANSSEN and DEAN JANSSEN,   :

                Defendants.           :
------------------------------------------------------------x
ANDREW D. BEER,                                   :          05 Civ. 3269 (SHS)

                Plaintiff,            :

            -against-                              :

KATHLEEN JANSSEN and DEAN JANSSEN,   :

                Defendants.           :
------------------------------------------------------------x
ANDREW D. BEER,                                   :          05 Civ. 3270 (SHS)

                Plaintiff,            :

            -against-                              :

ALAN GREEN; HANNA GREEN; and WHITE    :
BUFFALO, L.L.C.,                                        :

                Defendants.           :
------------------------------------------------------------x
SAMYAK VEERA,                                     :          05 Civ. 3788 (SHS)

                Plaintiff,            :

            -against-                              :

ALAN GREEN; HANNA GREEN; and WHITE    :
BUFFALO, L.L.C.,                                        :

                Defendants.           :
------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

In these related actions, plaintiffs Samyak Veera and Andrew D. Beer move to stay arbitration proceedings initiated by defendants. Because plaintiffs signed the agreements containing the arbitration clause solely as agents acting on behalf of disclosed principals, and because plaintiffs did not knowingly exploit the agreements and receive benefits directly from the agreements, the motion is granted.

1. **Facts**

Plaintiffs were both managing directors of Equilibrium Currency Trading, LLC. (Decl. of Samyak Veera filed in case no. 05 Civ. 2145 ("First Veera Decl.") ¶ 3; V. Pet. of Andrew D. Beer dated Feb. 28, 2005 ¶1, Ex. 8 to Pl. Beer's Mem. of Law in Supp. of His Mot. to Stay Arb.). Beer also was president of Bricolage Capital, LLC. (V. Pet. of Andrew D. Beer dated Mar. 1, 2005 ¶ 1, Ex. 7 to Pl. Beer's Mem. of Law).

Both Equilibrium and Bricolage (collectively, the "Investment Companies") engaged in investment management for clients, (Veera Decl. dated Apr. 23, 2005 ¶ 1; Beer Pet. dated Mar. 1, 2005 ¶ 1, Ex. 7 to Pl. Beer's Mem. of Law), and defendants entered into two "Currency Management and Trading Authorization Agreements" and one "Investment Management Agreement" (collectively, the "agreements") with the Investment Companies. One agreement identified Equilibrium as the manager and Dean and Kathleen Janssen as the "client." Kathleen Janssen signed on behalf of herself; Veera signed the agreement under the signature line for Equilibrium, writing "Managing Director" in the line set forth as "Title." (Currency Management and Trading Authorization Agreement, Ex. A to First Veera Decl.).

The second agreement identified Equilibrium as the Manager and White Buffalo, LLC as the "client," and was signed by defendant Allan Green. (Currency Management and Trading Authorization Agreement dated June 2, 2000, Ex. A to Decl. of Samyak Veera filed in case no.

2

05 Civ. 3788 ("Second Veera Decl.")). However, Veera did not sign this agreement at all; instead, plaintiff Beer signed on behalf of Equilibrium as a managing director. (Id.).

The third agreement was between Kathleen Janssen and Bricolage. Bricolage was the Manager. This agreement does not identify any person or entity as the client and bears only Kathleen Janssen's signature; neither Veera nor Beer signed the document. (Investment Management Agreement, Ex. 1 to Pl. Beer's Mem. of Law).

Thus, in each document, the Investment Company that was a party to the agreement was identified as "the Manager." Each agreement expressly specified that it was "entered into by and between" the relevant Investment Company as "Manager" on one hand and the "client" on the other. Plaintiffs signed the agreements as "Managing Director" of the relevant Investment Company. In particular, each signature line specified that the Investment Company was the signatory, and was being represented "By" plaintiffs, who also set forth their "Title" in the Investment Company. The agreements never referred to plaintiffs individually. (See Currency Management and Trading Authorization Agreement, Ex. A to First Veera Decl.; Currency Management and Trading Authorization Agreement dated June 2, 2000, Ex. A to Second Veera Decl.; Investment Management Agreement, Ex. 1 to Pl. Beer's Mem. of Law).

The agreements contained another important provision – paragraph 5, titled "Liabilities of the Manager." As noted above, each contract defines the relevant Investment Company to be the "Manager." Paragraph 5 states in relevant part as follows:

> Positions, assets, contracts, and transactions conducted by the Manager for the Client's Account are for the account and risk of the Client and are not guaranteed by the Manager. Neither the Manager nor any of its officers, directors, employees or agents shall be liable for any loss, expense, cost or liability arising out of any error in judgment or any action or omission hereunder, including any instruction given to the Custodian by anyone other than an officer, director, employee or agent of the Manager, unless arising out of their negligence, malfeasance or bad faith. The Manager may rely on any notice

or communication (written or oral) reasonably believed by it to be genuine. These limitations shall not act to relieve the Manager from any responsibility or liability for any responsibility, obligation or duty that the Manager may have under state or federal law that is not waivable by contract.

(Currency Management and Trading Authorization Agreement, Ex. A to First Veera Decl.; Currency Management and Trading Authorization Agreement dated June 2, 2000, Ex. A to Second Veera Decl.; Investment Management Agreement, Ex. 1 to Pl. Beer's Mem. of Law).

After entering into the agreements, the clients allegedly suffered substantial losses in connection with a tax strategy they claim that plaintiffs and the Investment Companies devised and effectuated. (Statement of Claim dated Dec. 23, 2004, Ex. C to First Veera Decl.). The clients then served Veera and Beer, among others, with demands for arbitration and statements of claim alleging breach of fiduciary duty, fraud, negligent misrepresentation, malpractice, breach of contract, conspiracy and other wrongs. (Id.; Demand for Arbitration dated Dec. 23, 2004, Ex. B to First Veera Decl.; Demand for Arbitration dated Dec. 28, 2004, Ex. B to Second Veera Decl.). Specifically, the Janssens, the Greens, and White Buffalo served demands for arbitration upon Veera and Beer.

In response, Veera filed two litigations in this Court: one against the Janssens and one against the Greens and White Buffalo. Both suits seek a declaration that the agreements did not bind Veera personally to arbitration, as well as prohibiting the arbitrations from proceeding.

Beer filed two petitions in New York State Supreme Court: one against the Janssens and one against the Greens and White Buffalo. Both petitions sought judgments staying the arbitrations. Defendants then removed the two Beer actions to federal court on the basis of diversity jurisdiction. All four actions are now before this Court as related actions. Since the relevant facts are identical with respect to each agreement and all parties, this Opinion sets forth the reasoning applicable to the motions to stay arbitration in all four actions.

4

## II. Legal Standard

"[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability, regardless of whether the relief sought is an order to compel arbitration or to prevent arbitration." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); see also 9 U.S.C. § 4 (1999).

The summary judgment standard, set forth in Fed. R. Civ. P. 56(c), provides that summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Bensadoun, 316 F.3d at 175-78; Oppenheimer & Co., Inc. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995). If the moving party has "substantiated the entitlement [to stay arbitration] by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." Oppenheimer, 56 F.3d at 358; see also Bensadoun, 316 F.3d at 175-78.

## III. The Law Applicable to Arbitration Agreements

Because "arbitration is contractual by nature," the Court cannot compel a party to arbitrate unless that party previously agreed to arbitrate. Thomson-CSF, S.A. v. Amer. Arbitration Assoc., 64 F.3d 773, 776 (2d Cir. 1995). Arbitration agreements "must not be so broadly construed as to encompass claims and parties that were not intended by the original contract." Id. Therefore, nonsignatories to arbitration agreements "[can] not ordinarily be compelled under the [Federal Arbitration Act] to participate in [an] arbitration proceeding." Arhontisa Maritime Ltd. v. Twinbrook Corp., No. 01 Cv. 5044, 2001 WL 1142136 (S.D.N.Y. Sept. 27, 2001); see also Thomson, 64 F.3d at 776 ("[A] party cannot be required to submit to

5

arbitration any dispute which he has not agreed to submit.") (quotation marks and citations omitted).

However, there are five limited exceptions pursuant to which a nonsignatory may be bound to an arbitration agreement. See MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 61 (2d Cir. 2001); Amer. Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 352 (2d Cir. 1999); Thomson, 64 F.3d at 776. Those exceptions are (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel. Thomson, 64 F.3d at 776; Denney v. BDO Seidman, LLP, -- F.3d --, No. 04 Civ. 2654, 2005 WL 1389911 at *10 (June 14, 2005 2d Cir.).

In these litigations, defendants – the clients of the Investment Companies – claim that Veera and Beer – the managing directors of the Investment Companies – are bound to arbitrate these disputes under the theories of agency and estoppel. An agreement to arbitrate does not bind an agent acting on behalf of a disclosed principal "unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." Lerner v. Amalgam. Clothing & Textile Workers Union, 938 F.2d 2, 5 (2d Cir. 1991) (internal quotation marks omitted); see also Interocean Shipping Co. v. Nat'l Shipping & Trading Corp., 462 F.2d 673, 678 (2d Cir. 1972); Usina Costa Pinto S.A. v. Louis Dreyfus Sugar Co., 933 F.Supp. 1170, 1178 (S.D.N.Y. 1996).

In order for a party to be estopped from avoiding arbitration, that party must have knowingly exploited the agreement containing the arbitration clause. See MAG Portfolio Consult, GMBH, 268 F.3d at 61; Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S., 9 F.3d 1060, 1063-64 (2d Cir. 1993). The party must knowingly accept benefits from the

agreement and those "benefits must be direct – which is to say, flowing directly from the agreement" itself. MAG Portfolio Consult, GMBH, 268 F.3d at 61.

## IV. Analysis

The clients first urge that Veera and Beer are bound to the agreements as agents of the Investment Companies. However, Veera and Beer executed the agreements solely as agents acting on behalf of disclosed principals. The very first sentence of each agreement sets forth that the agreements were "entered into by and between" the Investment Companies on one hand and the clients on the other. The agreements never refer to Veera or Beer personally. In addition, the signature lines of the agreements make plain that the parties to the contract are the Investment Companies and the clients, and that plaintiffs were merely signing on the companies' behalves as managing directors of the companies.

The clients have not come forward with any evidence contradicting those facts; nor have the clients produced any evidence that it was the intention of Veera or Beer "to substitute or superadd [their] personal liability for, or to, that of [their] principal." Lerner, 938 F.2d at 5 (internal quotation marks omitted). Accordingly, the Court concludes that Veera and Beer signed the agreements only as agents on behalf of disclosed principals – i.e., only as managing directors of the Investment Companies – and, as such, Veera and Beer cannot be compelled to arbitrate pursuant to the agency exception to the rule that nonsignatories cannot be compelled to arbitrate their disputes.

The clients next assert that Veera and Beer are estopped from avoiding arbitration because Veera and Beer knowingly received a benefit directly from the agreements, namely, the limited liability clause in Paragraph 5. As an initial matter, it is unclear whether a provision

7

precluding liability for "error[s] in judgment" but allowing liability for "negligence, malfeasance or bad faith" provides any benefit at all.

In any event, the limitation on liability is contained in a provision titled, "Liabilities of the Manager," i.e., liabilities of the Investment Companies, not liabilities of the managing directors of the Investment Companies. The provision is aimed directly at limiting the Investment Companies' liability; the benefit of that provision was secured principally for, and inured principally to, the Investment Companies. Any application of that provision to Veera and Beer is incidental to their agency relationship with the Investment Companies. See Arhontisa, No. 01 Cv. 5044, 2001 WL 1142136 at *4 & n.1 & 2.

The agreements at issue here also differ markedly from the direct benefits that the Second Circuit has found sufficient for the purposes of estopping someone from denying they are bound by an arbitration agreement they did not sign. For example, in Deloitte Noraudit A/S, 9 F.3d at 1064 (2d Cir. 1993), the accounting firm Noraudit received the "valuable asset" of being able to call itself Deloitte Noraudit A/S and use the Deloitte name in connection with rendering accounting services, and "the parties clearly intended to bind" Noraudit in the agreement at issue, which "specifically preserv[ed] Noraudit's right to use the name" Deloitte. Id. When asked to adopt and approve the agreement, Noraudit did not object. Id.

Here, in contrast, the parties did not intend to bind plaintiffs personally, but rather intended to bind only the clients and the Investment Companies, as the agreements set forth. In addition, even if the clause purporting to limit plaintiffs' liability could be considered a "valuable asset" in the same sense as the Deloitte name, there is no evidence that plaintiffs invoked the limited liability provision, while Noraudit used the Deloitte name for at least one

8

year pursuant to the agreement in that case. Finally, Veera and Beer, unlike Noraudit, were not asked to adopt and approve the agreement.

American Bureau of Shipping, 170 F.3d at 351, is also inapposite. In that case, the owners of a yacht received "two major benefits" from their ship's classification, namely, "much" lower insurance rates and the ability to sail under the French flag, which allowed them to compete in the very race for which they had specifically commissioned the vessel. Id. In addition, the owners themselves – acting on their own behalves – expressly contracted with the shipbuilder to acquire a particular classification, and the shipbuilder in turn contracted with the classification society in order to obtain that classification on behalf of the yacht owners. Id.

Plaintiffs here never entered into any contract personally, but rather only as agents acting on behalf of disclosed principals; quite differently, the yacht owners in American Bureau of Shipping were the true principals in interest to whose benefit the contracts inured. See also Arhontisa, No. 01 Cv. 5044, 2001 WL 1142136 at *4 & n.1 & 2. Moreover, while the yacht owners actually derived tangible benefits from the contracts providing for classification, plaintiffs here, as noted, have never invoked the limited liability clause of paragraph 5.

In addition, district court cases holding that nonsignatories may be bound to arbitration agreements on the ground of estoppel illustrate the concepts that the nonsignatories must be more than mere agents acting on behalf of disclosed principals, and they must receive clear benefits because of a relationship greater than their agency. See HD Brous & Co., Inc. v. Mrzyglocki, No. 03 Cv. 8385, 2004 WL 376555 at *7 (S.D.N.Y. Feb. 26, 2004) (nonsignatory must arbitrate when agreement named it as intended beneficiary and "establish[ed] and define[d] the working relationship" between the parties); Hickox v. Friedland, No. 01 Cv. 2025,

2001 WL 1490696 (S.D.N.Y. Nov. 21, 2001) (nonsignatory must arbitrate when he signed agreement as "partner" of signatory company).

Veera and Beer signed the agreements only as agents on behalf of disclosed principals and neither exploited the agreements nor received benefits directly from them. Thus, these actions fall within the rule that nonsignatories to an arbitration agreement cannot be compelled to arbitrate their disputes. The actions do not fall within any of the exceptions to that rule. Accordingly, the motions to stay the arbitrations are granted.

Dated: New York, New York
July 5, 2005

Sidney H. Stein, U.S.D.J.